UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-CV-60775-VALLE

<u>CONSENT CASE</u>

NORA V. MORALES,

    Plaintiff,

v.

NANCY A. BERRYHILL,
Acting Commissioner of Social
Security Administration,

    Defendant.
_____/

## **<u>ORDER ON MOTIONS FOR SUMMARY JUDGMENT</u>**

THIS MATTER is before the undersigned on Plaintiff Nora V. Morales's ("Plaintiff") Motion for Summary Judgment (ECF No. 33) and Defendant Nancy A. Berryhill, Acting Commissioner of the Social Security Administration's ("Defendant") Motion for Summary Judgment and Response (ECF Nos. 37, 38) (the "Motions"). Pursuant to the parties' consent, this case is before the undersigned for all proceedings, including trial and entry of final judgment. (ECF Nos. 28, 30); *see also* 28 U.S.C. § 636(c).

Accordingly, after due consideration of the record and the parties' briefs, including the Motions, Defendant's Response, and Plaintiff's Reply (ECF No. 41), and being otherwise fully advised on the matter, Plaintiff's Motion is **DENIED**, Defendant's Motion is **GRANTED**, and the Administrative Law Judge's ("ALJ's") Decision is **AFFIRMED** for the reasons set forth below.

# I. PROCEDURAL HISTORY

This suit involves applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits under Titles II and XVI, respectively, of the Social Security Act, 42 U.S.C. § 401 *et seq.* (the "Act"). Plaintiff applied for benefits on March 20, 2014, alleging a disability beginning on November 19, 2012. (R. 13, 269-84).[1] Plaintiff's claim was denied initially and again upon reconsideration. (R. 13, 135-41, 144-54). Plaintiff subsequently requested a hearing, which was held before ALJ Valencia Jarvis on January 12, 2016. (R. 58-85, 186-91). Plaintiff, appearing with counsel, and a Vocational Expert testified at the hearing. (R. 58-85).

On March 1, 2016, the ALJ issued a decision (the "Decision") denying Plaintiff's application and finding that Plaintiff was not disabled within the meaning of the Act. (R. 13-24). Thereafter, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's Decision the Commissioner's "final decision." (R. 1-6); *see Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Plaintiff now seeks judicial review of the ALJ's Decision. (ECF No. 1); *see also* 42 U.S.C. § 405(g). Both parties have moved for summary judgment, and the Motions are ripe for adjudication. (ECF Nos. 33, 37, 38, 41).

# II. STANDARD OF REVIEW

Judicial review of the ALJ's Decision is limited to whether there is substantial evidence in the record as a whole to support the ALJ's finding and whether the ALJ applied the correct legal standards in making her determination. *Carson v. Comm'r of Soc. Sec.*, 440 F. App'x 863, 864 (11th Cir. 2011) (internal citations omitted); *see also* 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as

---

[1] All references are to the record of the administrative proceeding, which was filed as part of the Defendant's Answer. *See* (ECF Nos. 26 and 27).

adequate to support a conclusion." *Carson*, 440 F. App'x at 864 (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)); *accord Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987). A court, however, "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal citation omitted). Even if evidence preponderates against the ALJ's Decision, a court must affirm "if the decision is supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing 42 U.S.C. § 405(g)). Within this narrow role, however, courts do not act as automatons. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). Rather, they "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Id.* (citing *Bloodsworth*, 703 F.2d at 1239).

To qualify for benefits, a claimant must be disabled within the meaning of the Act. *See* 42 U.S.C. §§ 423 (standard for disability insurance benefits), 1382 (standard for supplemental security income benefits). A claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is one that "results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

To determine eligibility, the ALJ employs a five-step sequential evaluation:

(1) Is the person presently unemployed?
(2) Is the person's impairment severe?
(3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart. P, Appendix 1 (the "Listings")?

3

  (4)  Is the person unable to perform his or her former occupation?
  (5)  Is the person unable to perform any other work within the economy?

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). An affirmative answer to any of the above questions leads either to the next question or, on Steps 3 and 5, to a finding of disability. *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). A negative answer to any question, other than Step 3, leads to a determination of "not disabled." *Id.*

  Importantly, the burden of proof rests on the claimant through Step 4. *Phillips v. Barnhart*, 357 F.3d 1232, 1241 n.10 (11th Cir. 2004). At Step 4, the ALJ must consider: (i) the claimant's residual functional capacity ("RFC"); and (ii) the claimant's ability to return to her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The regulations define RFC as that which an individual is still able to do despite the limitations caused by her impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a). The ALJ will "assess and make a finding about [the claimant's RFC] on all the relevant medical and other evidence" in the case. 20 C.F.R. §§ 404.1520(e), 416.920(e). The RFC assessment is used to determine whether the claimant can return to her past relevant work under Step 4, and if so, "the ALJ will conclude that the claimant is not disabled." *Phillips*, 357 F.3d at 1238 (citations omitted). If a claimant cannot return to her past relevant work, then the ALJ proceeds to Step 5. *Id.*

  At Step 5, the ALJ considers the claimant's RFC, age, education, and work experience to determine whether the claimant "can make an adjustment to other work." 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Phillips*, 357 F.3d at 1239 (citation omitted). The ALJ must determine if there is other work available in significant numbers in the national economy that the claimant has the ability to perform. *Phillips*, 357 F.3d at 1239. If the claimant can make the adjustment to other work, the ALJ will determine that the claimant is not disabled. *Id.* Conversely, if the claimant cannot make the adjustment to other work, the ALJ will determine that the claimant

is disabled. *Id.* The ALJ may determine whether the claimant has the ability to adjust to other work in the national economy by either: (1) applying the Medical Vocational Guidelines (contained within 20 C.F.R. Part 404, Subpart P, Appendix 2); or (2) using a Vocational Expert, who can opine on whether someone with the claimant's limitations can obtain employment in the national economy. *Id.* at 1239-40.

## III. THE RECORD

### A. Testimony and Relevant Background

Plaintiff was 48 years old on the alleged onset date and 51 years old on the date of the administrative hearing. (R. 63). Plaintiff alleged disability due to a right hip replacement. (R. 86, 318). Plaintiff was involved in a car accident in 2012, in which she fractured her right hip and injured her coccyx (tailbone). (R. 62, 369, 391). Following the accident, Plaintiff underwent a right hip replacement. (R. 62, 67). Plaintiff testified that she does not suffer any pain or limitations from her hip replacement. (R. 67). However, she experiences ongoing pain in her coccyx. (R. 65-66, 369). Plaintiff's pain improves with medication, but worsens if she sits or stands for more than 30 to 45 minutes or walks for more than 45 minutes. (R. 65-66, 80); *but see* (R. 531) (Dr. Catano's notes that Plaintiff experiences discomfort after sitting for one hour), and (R. 575) (Dr. Hayden's notes stating that Plaintiff's tailbone pain is triggered after sitting for an hour and a half). Plaintiff used a "donut" seat to alleviate her pain while sitting. (R. 70, 80, 575). Plaintiff also reported migraines and depression and receives treatment for depression twice a month. (R. 65, 67-68).

Plaintiff lives with her boyfriend. (R. 69). She does light cooking and cleaning, but her boyfriend vacuums the floors and assists with the laundry and grocery shopping. *Id.* Plaintiff can

lift a gallon of milk, but anything heavier causes her back pain. (R. 66-67). Plaintiff can drive for 15 to 30 minutes but cannot sit for a longer period of time without discomfort. (R. 70).

Plaintiff obtained a Bachelor's Degree in Argentina. (R. 64, 611). From 2009 through 2012, Plaintiff worked as a billing clerk at a law firm. (R. 74-75, 261). As a billing clerk, Plaintiff did not do any lifting and sat for between eight to ten hours per day. (R. 75). Plaintiff stopped working as a billing clerk after her accident in 2012 due to her surgery and the exhaustion of her Family and Medical Leave Act benefits, at which point she was fired. *Id.* Prior to working as a billing clerk, Plaintiff worked as a bank teller in 2007 and 2008. (R. 76, 261). In 2006 and 2007, Plaintiff worked at a daycare, caring for babies. (R. 77-78). Plaintiff was also briefly self-employed as a piano teacher in 2006. (R. 78, 261).

### B. Vocational Expert's Testimony

A Vocational Expert ("VE") also testified at the hearing. (R. 81-85). The VE described Plaintiff's past relevant work as a billing clerk (a semi-skilled, sedentary job with an SVP of four); a bank teller (a skilled, light job with an SVP of five); a childcare worker (a semi-skilled, light job with an SVP of four); and a music instructor (a skilled, light job with an SVP of seven).[2] (R. 23, 82). The ALJ asked the VE whether a hypothetical individual of Plaintiff's same age, education, past relevant work, and residual functional capacity could return to Plaintiff's past relevant work.[3] (R. 23, 82-83). The VE advised that the hypothetical individual could perform all of Plaintiff's past relevant work. (R. 23, 83). Plaintiff's counsel further limited the hypothetical individual to

---

[2] Ultimately, the ALJ found that "only [Plaintiff's] work as a billing clerk [(2009-2012)] and bank teller [(2007-2008)] qualified as past relevant work under the regulations." (R. 23).

[3] The ALJ limited the hypothetical individual to: lifting and carrying 20 pounds occasionally and ten pounds frequently; standing and walking six hours in an eight-hour day; sitting six hours in an eight-hour day; frequently climbing ramps and stairs; never climbing ladders and scaffolds; occasionally stooping and kneeling; frequently crouching; occasionally crawling; and, having occasional exposure to unprotected heights and dangerous equipment. (R. 82-83).

6

sitting for 45 minutes and walking for 20 minutes throughout the day. (R. 84). The VE testified that such an individual could still perform sedentary, unskilled jobs. (R. 84-85).

**C. Relevant Medical History**

i. <u>Hip and Coccyx Impairments</u>

Plaintiff was involved in a motor vehicle accident on November 19, 2012, while visiting Argentina. (R. 62, 367, 369, 413). Plaintiff sustained a dislocation of the right hip joint and underwent emergent closed reduction surgery in Argentina. (R. 413). After returning to the United States, Plaintiff underwent an MRI of the right hip and coccyx on February 4, 2013. (R. 369, 372). Plaintiff was initially diagnosed with a sacral and acetabular fracture. (R. 369, 372); *but see* (R. 583, 620) (later diagnostic tests confirming no fracture of the coccyx).

*Dr. Dominic Carreira*

Plaintiff continued experiencing hip pain and sought treatment from Dr. Carreira in March 2013. (R. 358-78). X-rays of Plaintiff's pelvis and right hip revealed incongruity of the right hip joint. (R. 361). A CT scan revealed an intra-articular loose body and incongruency in the right hip. (R. 358). During her treatment with Dr. Carreira, Plaintiff described the pain in her right hip as being 5/10, and she used a walker to ambulate. (R. 358-59). Dr. Carreira referred Plaintiff to Brian Cross, D.O., for further examination and treatment. (R. 358, 413).

*Dr. Brian Cross*

On March 26, 2013, Dr. Cross examined Plaintiff and reviewed Plaintiff's prior CT scan and x-rays. (R. 413-15). Dr. Cross concluded that Plaintiff exhibited a nonconcentric reduction of the right hip joint and an inferior femoral head fracture with cartilage delamination and retained bony fragments within the hip joint. (R. 414). On April 11, 2013, Dr. Cross performed a total right hip arthroplasty without incident. (R. 439-42).

During hip surgery, Dr. Cross found Plaintiff had an un-united fracture of the femoral head and intra-articular entrapment of the acetabular labrum. (R. 440). On June 5, 2013, at a six-week post-operative visit, Plaintiff reported that her pain had improved markedly. (R. 427). Plaintiff stopped taking Percocet in favor of Ultram, and Dr. Cross approved Plaintiff to return to work and to exercise at the gym. *Id.* On July 9, 2013, Plaintiff requested that she be discharged from physical therapy after only two sessions. (R. 444-45). Plaintiff did not complain of hip pain, and the discharge notes indicate that "[Plaintiff] exhibits a fair prognosis at time of discharge from skilled rehabilitative therapy in conjunction with home exercise program." (R. 444). By August 27, 2013, four months after surgery, Plaintiff did not complain of hip pain, ambulated with a non-antalgic gait, and had no hip instability. (R. 424). Plaintiff did, however, complain of coccyx pain. *Id.* Dr. Cross recommended Plaintiff obtain an MRI of the pelvis to rule out other causes of pain, such as a tumor. *Id.*

*Broward Health Hospital*

On October 15, 2013, Plaintiff went to the emergency room at Broward Health complaining of back pain. (R. 502-05). Two x-rays of Plaintiff's spine showed no significant findings. (R. 504-05). On November 6, 2013, Plaintiff underwent an x-ray of her coccyx and sacrum at Broward Health. (R. 507-08). The x-ray showed mild spurring of the sacroiliac joints and an angular deformity of the sacrum, suggestive of a fracture. (R. 508). Correlation with an MRI was recommended. *Id.*

*State Agency Examiner Dr. John Catano*

On June 25, 2014, at the request of the Commissioner, Plaintiff was examined by Dr. Catano. (R. 531-36). Plaintiff advised Dr. Catano that she experienced lower back pain that radiated to the right hip. (R. 531). Plaintiff stated she was able to walk up to half a block with

8

pain, stand for up to 30 minutes, lift up to 10-15 pounds, and sit for up to 1 hour. *Id.* Dr. Catano noted mild tenderness and mild decreased range of motion in Plaintiff's right hip. (R. 532). Plaintiff also exhibited mild tenderness and spasms on paraspinalis muscle on the lower sacrum region. (R. 533). Plaintiff's ambulation was mildly antalgic. *Id.* Nevertheless, Plaintiff did not use a walker or cane and was able to get in and out of a chair and on and off of an examining table by herself with little difficulty. *Id.* Dr. Catano opined that Plaintiff experienced mild restrictions due to her right hip arthroplasty, mild pain at the coccyx region, and mildly painful ambulation. *Id.*

*May 2014 and November 2014 Imaging Texts*

A May 15, 2014 MRI of Plaintiff's pelvis revealed an angular deformity, but no acute fracture, soft tissue mass, or abnormal fluid collection. (R. 582). The marrow signal of the pelvis sacrum and coccyx was intact, and the sacroiliac joints were symmetric. *Id.* The left femoral head was smooth, uniform, and round, demonstrating normal signal intensity, and there was no MRI evidence of an acute fracture or dislocation. (R. 582-83). Plaintiff was diagnosed with a chronic sacral deformity. (R. 583).

On November 25, 2014, a CT scan of Plaintiff's pelvis showed no fracture. (R. 620). The reviewing doctor identified mild degenerative changes in the symphysis pubis, but the pelvic visera and lower lumbar spine were unremarkable. *Id.*

Despite the results of the MRI in May 2014 MRI and the CT scan November 2014 showing no fracture of the coccyx, Plaintiff continued to complain of coccyx pain through December 2015. *See e.g.,* (R. 544-45, 548-49, 554-55, 558-59, 561-62, 565, 573, 575, 580).

*State Agency Reviewer Dr. Walter Harris*

In July 2014, Dr. Harris reviewed Plaintiff's medical evidence for both her SSI and DIB claims at the reconsideration level. (R. 106-31). Dr. Harris concluded that Plaintiff's impairments were likely to produce the symptoms she alleged. (R. 112, 125). However, Plaintiff's statements about the intensity, persistence, and limiting effects or her symptoms were not supported by objective medical evidence alone, and Plaintiff was only partially credible. *Id.* Dr. Harris found Plaintiff had exertional and postural limitations and assessed Plaintiff's RFC at the light exertional level. (R. 113, 126).

ii. Migraines

On September 27, 2012, prior to Plaintiff's automobile accident, Juan Carlos Sanchez, M.D., evaluated Plaintiff for headaches and an abnormal brain MRI.[4] (R. 420-22). Plaintiff reported to Dr. Sanchez that she had experienced headaches for eight weeks, which were relieved by extra strength Tylenol. (R. 420). The headaches occurred approximately three times per week. *Id.* Dr. Sanchez believed that Plaintiff's headaches were caused by stress and that her abnormal brain MRI was unrelated to her headaches. (R. 422). Dr. Sanchez recommended that Plaintiff obtain blood work to evaluate other potential causes, provide him with the brain MRI for review, and then return to the clinic.[5] (R. 422). Plaintiff was treated for migraines with medication after her motor vehicle accident. (R. 549, 555, 559, 566-67, 573).

iii. Depression

In November 2015, Plaintiff was evaluated for depression at the Psychology Services Center at Nova Southeastern University by Morgan Levy, M.S., and Jeffrey Kibler, Ph.D.

---

[4] Dr. Sanchez's report references an August 31, 2012 MRI of Plaintiff's brain, which revealed non-specific deep white matter disease of undeterminate chronicity. (R. 412, 420).

[5] Plaintiff did not return to Dr. Sanchez.

(R. 610-13). Plaintiff reported experiencing depression since her car accident in November 2012, and advised that her depression significantly interfered with her life. (R. 610). Plaintiff did not display many attention and concentration difficulties and was able to remember the questions asked of her, rarely asking for them to be repeated. (R. 612). Plaintiff was diagnosed with Major Depressive Disorder, single episode (moderate), and was advised to begin weekly therapy. (R. 612-13).

## IV. THE ALJ'S DECISION

On March 1, 2016, after reviewing the evidence and conducting the requisite five-step analysis, the ALJ concluded that Plaintiff was not disabled under the Act. (R. 14, 23-24).

At Step 1, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since November 19, 2012, the alleged onset date. (R. 15).

At Step 2, the ALJ found that Plaintiff's right total hip arthroplasty and coccydnia due to sacral deformity were severe impairments. (R. 16).

At Step 3, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listings. (R. 17-18).

At Step 4, the ALJ determined that Plaintiff has the RFC to perform light work as follows: lift and carry 20 pounds occasionally and ten pounds frequently; stand, walk, and sit six hours in an eight-hour workday; frequently climb ramps and stairs; never climb ladders or scaffolds; occasionally stoop, kneel, and crawl; frequently crouch; and, occasionally be exposed to unprotected heights and dangerous equipment. (R. 18).

At Step 5, based on the testimony of the VE and considering Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff could perform her past relevant work as a billing clerk (sedentary) and bank teller (light). (R. 23).

## V. DISCUSSION

Plaintiff argues that the ALJ did not properly evaluate Plaintiff's credibility and erroneously concluded that Plaintiff's complaints were inconsistent with the objective medical evidence in the record. *See generally* (ECF Nos. 33 and 41); *see also* (ECF No. 43).[6] In response, Defendant argues that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's Decision. *See generally* (ECF Nos. 37 and 38). For the reasons set forth below, the undersigned finds that the ALJ's credibility determination is supported by the record.

The Eleventh Circuit employs a three-part pain standard to evaluate a claimant's attempts to establish disability through testimony about pain and subjective symptoms. *McLain v. Comm'r, Soc. Sec. Admin.*, 676 F. App'x 935, 937 (11th Cir. 2017). "This standard requires (1) evidence of an underlying medical condition, and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition, or (3) evidence that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Id.* at 937 (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002)).

The ALJ is not required to use any particular language in applying the pain standard, as long as she sufficiently articulates the reasons for discrediting Plaintiff's testimony. *Davis v.*

---

[6] Plaintiff summarily "notes" in her Motion that the ALJ assigned limited weight to Dr. Cross's and Dr. Nervaez's opinions, and "[doesn't] believe that the reasons [the ALJ] listed for doing this are logical and [are] not a good reason[s] for ignoring their opinions." (ECF No. 36 at 4). In a subsequent Joint Status Report, however, the parties agree that the only issue before the Court is "whether the [ALJ's] evaluation of Plaintiff's subjective allegations is supported by substantial evidence in the record." (ECF No. 43). Accordingly, Plaintiff has waived any argument that the ALJ improperly weighed the opinions of Dr. Cross and Dr. Nervaez. Further, arguments raised in a perfunctory manner without supporting arguments and authority are considered waived by the Court. *Kellner v. NCL (Bahamas), LTD.*, No. 16-15837, 2018 WL 4150851, *2264-65 (11th Cir. Aug. 29, 2018). In any event, the undersigned has reviewed the evidence and finds that the ALJ sufficiently articulated a basis for the weights assigned to the various doctors, and those weights are supported by substantial medical evidence.

*Barnhart*, 153 F. App'x 569, 572 (11th Cir. 2005). "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Jarrell v. Comm'r of Soc. Sec.*, 433 F. App'x 812, 814 (11th Cir. 2011) (quoting *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995)).

Here, the ALJ concluded that, although Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible. (R. 21). The ALJ then articulated several reasons for discounting Plaintiff's credibility. *See* (R. 22). Specifically, the ALJ wrote:

> Despite the claimant's seemingly earnest testimony and presentation, there were some inconsistencies, most notably with her subjective tailbone pain complaints and associated restrictions, which were not well supported by the conservative treatment she received, lack of follow up with a neurologist for that condition, and imagining studies that ultimately showed only a sacral deformity.
>
> Additionally and despite allegations/testimony regarding migraines/headaches, treatment was conservative, limited to medication(s), such as Maxalt, as well as amitriptyline for prophylactic use (see Ex. 8F). A 2012 neurological evaluation was normal/unremarkable, with Juan Sanchez, however further review and evaluation was needed (Ex. 2F/42-44). There is no evidence that the claimant followed up with that doctor, though, and as of December 2015, migraines were still managed with Maxalt and amitriptyline, with no documented side effects. The case file did not reference any associated complications or hospitalizations associated with this condition. Accordingly, migraines/headaches are considered non-severe.
>
> In sum, the undersigned finds that the claimant's allegations of disability are unsupported by the medical records, including objective evidence and medically acceptable credible opinions and therefore finds that she could perform work within the above residual functional capacity. The medical record did not support the claimant's allegations of limitations to the extent that she would be unable to perform any work on a sustained basis. Any such limitations are therefore likely self-imposed or overstated.

*Id.*

Against this backdrop, the undersigned finds that the ALJ correctly applied the pain standard, adequately articulated her reasons for discrediting Plaintiff's testimony, and correctly summarized the objective medical evidence in support of her opinion. Specifically, the ALJ evaluated Plaintiff's complaints of tailbone pain against a May 2014 MRI and a November 2014 CT scan, both showing that Plaintiff did not have a fractured coccyx or sacrum. (R. 19, 22); *see also* (R. 582, 620) (MRI and CT scan showing Plaintiff did not have a fractured coccyx or sacrum). The ALJ also considered that, unlike Plaintiff's right hip condition, Plaintiff's tailbone pain was treated conservatively with medication (without side effects) and a donut pillow. (R. 19-20). Finally, Plaintiff was referred to a neurologist for her tailbone pain, but did not follow up, and an orthopedic doctor would not see Plaintiff. (R. 19, 22) (citing R. 545, 555, 559). Similarly, the ALJ discounted Plaintiff's complaints of migraines based on Plaintiff's conservative treatment with medication and her failure to see a neurologist. The ALJ's conclusions were clearly articulated and are supported by the record. *See* (R. 22, 549, 555, 559, 566-67, 573); *see also* (R. 420-22) (a 2012 neurology examination noting Plaintiff's migraines improved with extra strength Tylenol and were likely unrelated to abnormal MRI of Plaintiff's brain).

Moreover, the ALJ fully considered Plaintiff's treatment history. (R. 16-21); *see* 20 C.F.R. §§ 404.1529(c)(3)(v), 416.929(c)(3)(v). In the Decision, the ALJ fully considered and accurately summarized Plaintiff's medical records, including, among others, records from: (i) Dr. Cross (R. 18) (Exhibit 3F), (ii) Broward Health Coral Springs (R. 19) (Exhibits 5F and 11F); (iii) Dr. Catano (R. 20) (Exhibit 7F); (iv) Dr. Nervaez (R. 21) (Exhibit 2F); (v) Dr. Sanchez (R. 22) (Exhibit 2F); and (vi) Dr. Kibler (R. 16) (Exhibit 10F). The ALJ also considered the opinion of State Agency examiner, Dr. Walter Harris (R. 20) (Exhibits 5A and 6A). Accordingly, the undersigned finds that substantial evidence supports the ALJ's Decision. *See e.g.*, *Cooper v.*

*Comm'r of Soc. Sec.*, 521 F. App'x 803, 807-08 (11th Cir. 2013) (finding no error in ALJ's assessment of claimant's credibility where ALJ had referenced records showing claimant's condition had improved and claimant had reported improvement with pain and symptoms).

Ultimately, credibility determinations are the province of the ALJ, and a clearly articulated credibility finding with substantial supporting record evidence will not be disturbed. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005); *Foote*, 67 F.3d at 1562 (citation omitted). Here, the ALJ specifically considered Plaintiff's allegations regarding his impairments, assessed Plaintiff's credibility in the context of all the other evidence, and applied the proper legal standard. *See generally Carson,* 440 F. App'x at 864. Thus, the undersigned finds no reversible error regarding the ALJ's credibility determination, which is supported by substantial evidence.

## VI.    CONCLUSION

For the reasons stated above, it is hereby **ORDERED AND ADJUDGED** that:

1. Plaintiff's Motion for Summary Judgment (ECF No. 33) is **DENIED**, Defendant's Motion for Summary Judgment (ECF No. 37) is **GRANTED**, and the ALJ's Decision is **AFFIRMED**.

2. The Clerk is directed to enter judgment in favor of Defendant, to terminate all pending motions, and to **CLOSE** the case.

**DONE AND ORDERED** at Chambers, in Fort Lauderdale, Florida, on March 12, 2019.

*/s/ Alicia O. Valle*
ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

cc:     All Counsel of Record